IDA L. PASQUAY, Appellee, *vs.* ERNEST A. PASQUAY *et al.* Appellants.

*Opinion filed June 18, 1908.*

1. WILLS—*when devise is treated as a devise of money.* Where a will directs that land be sold and the proceeds divided the devise must be treated as a devise of money, and the devisees cannot sell or convey title to any part of the land nor can the interest of any one of them in the proceeds be sold on execution; but the devisees, if of age and under no disability, may elect to take the land instead of the proceeds, provided they all concur.

2. SAME—*re-conversion for benefit of one devisee vests no title in the others.* Where, by agreement of all the devisees, who are of age and competent, certain real estate which the will directed to be sold and the proceeds divided is given to one devisee in lieu of other provisions made for her by the will, the other devisees do not, by such re-conversion, become seized of any interest in the land.

3. STATUTE OF FRAUDS—*payment of consideration and delivery of possession of land create a title good in equity.* The payment of full consideration and the delivery of possession of land to the purchaser under an oral agreement for the sale is sufficient performance in equity to take the case out of the Statute of Frauds, and the purchaser may, in equity, avail of such title as a defense or to enforce specific performance.

4. SAME—*the Statute of Frauds is a personal defense.* A verbal contract respecting land is not void but voidable at the will of either party, and a third person having no interest in the land and not in privity with either of the parties at the time the agreement is made cannot interpose the defense of such statute.

5. DEEDS—*when deeds are merely evidence of title previously conferred.* Where, by verbal agreement of all the devisees, certain land is turned over to the exclusive possession of one devisee in lieu of the other provisions of the will for her benefit instead of selling the land and dividing the proceeds, as directed by the will, deeds subsequently executed by the other devisees to the one in possession do not convey title in the first instance, but are merely evidence of the title conferred by virtue of the agreement under which the possession was taken.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

This was a bill in chancery filed by appellee in the circuit court of Peoria county against appellant, Arthur Keithley, and others, in which appellee claimed to be the owner of certain real estate and prayed for certain relief as against a claim of interest in said premises made by appellant, and that the title in and to said premises be by decree of the court confirmed and vested in appellee.

As the case was disposed of by demurrer to the bill it is necessary to an intelligent understanding of the questions involved that the substance of the bill be fully set out.

The amended bill alleged that Emilie Pasquay died testate in Peoria, Illinois, on February 18, 1903, leaving no husband surviving her, but leaving the complainant and her three brothers, Ernest, Rudolph and Albert Pasquay, her only children and heirs-at-law, all of whom were of full age before the death of their mother; that at the time of the death of Emilie Pasquay she owned in fee and was in possession of the south half of lot 6, block 34, Monson & Sanford's addition to the city of Peoria, the fair cash value of which was $4500; that the will of said Emilie Pasquay was as follows:

"*First*—I appoint my brothers, Rudolph A. Schimpff, Gustavus H. Schimpff and Albert L. Schimpff, and the suc-

235—4

cessors and successor of them, as executors of this my last will and testament, and I direct them to pay all my just debts, funeral expenses and costs of administration as soon after my death as conveniently can be done.

"*Second*—It is my will that my executors shall divide all of my estate (except the sum of $4500, of which I will dispose in the next clause,) in equal shares among my children, their heirs and assigns.

"*Third*—I give and bequeath to my daughter, in addition to her one-fourth share of my estate, $4500, which sum I give to my executors, and to the survivors and survivor of them, in trust for the purpose of paying to my said daughter, Ida, the income and interest of the same in semi-annual installments, for her sole personal use; and if such income or interest should not be necessary for my said daughter's use or support, the same to be re-invested the same as the principal, and whatever sum shall remain or have accumulated at the death of my daughter, Ida, shall be divided among her brothers, their heirs or assigns, it being my will that said interest or income from said $4500 shall be paid to my daughter, Ida, during the term of her natural life.

"*Fourth*—My life insurance, or the proceeds thereof, shall be divided among my sons, their heirs and assigns, as the policies are held in their names.

"*Fifth*—It is my will that any money advanced by me to any of my children, and notes and mortgages given as security for such money, with interest remaining unpaid thereon, should be kept out and deducted from the share or shares of such child or children at the division of my estate, unless I should otherwise hereafter dispose.

"*Sixth*—I wish to have my executors arrange a sale of my personal property and real estate that I may possess at the time of my death, giving my children the preference as such purchasers at such sale, excepting, however, from such sale such articles of household goods, books, silverware and jewelry as my children should like to retain as keepsakes.

"*Seventh*—I give to my said executors, their successors and successor, full power to execute all necessary deeds and conveyances in the disposition of my estate and to carry this will into effect."

The bill alleged that the persons named in the will as executors and trustees refused to qualify; that the will was admitted to probate in March, 1903, and the three sons of the testatrix were duly appointed and qualified as administrators with the will annexed; that the estate of the testatrix consisted largely of personal property, a part of which was an indebtedness from Ernest Pasquay of $3625, an indebtedness from Rudolph of $900 and an indebtedness from Albert of $625, all of which was for money that had been advanced them by the testatrix in her lifetime; that the administrators took possession of the personal estate of the said testatrix and inventoried the same at the sum of $16,-129.15; that the indebtedness of the estate amounted to only the sum of $429.31; that the administrators had kept and retained all of said personal estate and had never accounted therefor to complainant or to the probate court; that complainant became one of the bondsmen of the administrators; that the will directed the executors to sell all the personal and real estate owned by the testatrix, and with the exception of $4500, to be withheld for the benefit of complainant, all the proceeds of the sale should be divided equally among the children of the testatrix, deducting from the shares of each, moneys advanced to them by their mother in her lifetime; that in March, 1903, and prior to their appointment as administrators, complainant and her brothers entered into a verbal agreement that instead of selling the premises above described, "the same should be by their said agreement converted into real estate and conveyed to this complainant in lieu of the $4500 bequeathed to her in and by the said will of their mother;" that at the time said agreement was made, and in pursuance thereof, said Ernest, Rudolph and Albert Pasquay delivered to the

complainant the exclusive possession of the said real estate; that she entered into possession of the same and has ever since held it, and now holds it, under and in pursuance of said agreement and of the conveyances thereafter mentioned; that no deed of conveyance was made to the complainant by her brothers at the time of the agreement and delivery of possession to her, but they held the $4500 bequest to her as well as all the balance of the estate of said testatrix, except a note and mortgage for the sum of $1200; that afterwards, by virtue and in consummation of the above mentioned agreement, Albert Pasquay and wife conveyed said real estate by quit-claim deed to Rudolph Pasquay August 4, 1904; that Rudolph Pasquay August 12, 1904, and Ernest Pasquay August 17, 1904, conveyed the same premises in like manner to complainant.

The bill further alleged that on the second day of July, 1904, Arthur Keithley, appellant, sued out of the circuit court of Peoria county a writ of attachment against Albert Pasquay and caused the sheriff to levy the same upon said real estate and upon the interest of Albert Pasquay therein, and afterwards, on the 3d day of January, 1905, said Arthur Keithley obtained a judgment in the case in which the attachment was issued against Albert Pasquay, both on the attachment and in assumpsit, for the sum of $1228.14, and on the 20th of February, 1905, by virtue of a special execution, sold the interest of Albert Pasquay in the property so levied upon, at which sale said Arthur Keithley became the purchaser for the sum of $750, by virtue of which he claims to be the owner of the undivided one-fourth interest in said real estate. The bill alleges that at the time of the issuance of the writ of attachment and of the levy and sale, complainant was, by herself and tenants, in full and exclusive possession of said real estate, and that Albert Pasquay had received all his rights, credits and shares in and to said real estate before the issuing of the attachment writ.

The bill further alleged that by reason of the premises aforesaid, Albert, Ernest and Rudolph Pasquay, by joining with complainant, "had the right and power, and exercised the same, to convert the real estate into real estate instead of into proceeds of real estate, as provided by said will, in favor of their sister and complainant;" that they did so exercise their right and power with the consent of the complainant, and that Albert Pasquay had no right or power, against her protest, either voluntarily or through the action of creditors, to make such conversion or part with his interest in any way at any time, and the bill alleges that complainant never gave her consent or in any manner authorized the levy and proceedings under the attachment writ, but repudiated the same, and avers that said levy and sale are null and void and constitute a cloud upon complainant's title; that in addition to the $1200 which had been turned over to complainant as a credit on her undivided one-fourth interest in the estate of Emilie Pasquay, and in addition to the full value of the real estate, there is still due and owing to her from said estate several thousand dollars, which is a first and prior lien, under the terms and provisions of the will, as against the claim of appellant, and that in the event said real estate so conveyed to complainant were to be sold there would be coming to her more than the full amount of the proceeds of the said premises, and that in case a trustee should be appointed to make such sale, the rights and equities of complainant should be ascertained and decreed to her as against all parties to the suit.

The bill prayed that the rights of the parties be ascertained and declared; that the levy and sale under the attachment proceeding in favor of Arthur Keithley be declared null and void, as a cloud upon complainant's title, and that the conveyances made by her brothers to her of said real estate be confirmed and decreed to vest title in her free from all right, claim or interest in any of the parties, and in the event the premises should be sold under the provi-

sions of the will, that a suitable person be appointed as trustee for that purpose, and that the rights and interests of complainant therein be decreed to be paid to her out of the proceeds of the sale.

Appellant filed a general demurrer to the bill, all other defendants being defaulted. The court overruled the demurrer, and appellant electing to abide by it, a decree was entered finding that Albert Pasquay had no interest in the premises at the time of the levy and proceedings under the attachment writ; that all of said proceedings were null and void in so far as they affected the title of complainant in said real estate, and the title was declared to be vested in complainant as against all the parties to the suit. Keithley prosecuted an appeal from that decree to the Appellate Court. That court affirmed the decree, and he has brought the case to this court by further appeal.

ARTHUR KEITHLEY, *pro se.*

SHEEN & MILLER, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

By the terms of the will none of the devisees took any interest in the real estate of testatrix. The will directed that all of the estate, real and personal, of the testatrix be sold and the proceeds be divided, except $4500 that was to be held in trust for the benefit of appellee. The devises, therefore, must be treated as devises of money and not of land, and in that case the devisees could not sell or convey title to any part of the land nor could the interest of any one of them in the proceeds be sold on execution. In such case the devisees may, if they are all of age and under no disability, elect to take the land itself instead of the money, but to accomplish this the concurrence of all the devisees is required. This has been held to be the law from the time of the decision in the case of *Baker* v. *Copenbarger,* 15 Ill. 103, to *Darst* v. *Swearingen,* 224 id. 229.

Appellant contends that the re-conversion of the lot in controversy into real estate was for the benefit of all four of the children of testatrix, and that after such re-conversion it became the same as intestate real estate, or as real estate devised equally to all of the devisees. This position is contrary to the allegations of the bill, which, for the purposes of the decision of this case, must be assumed to be true. It appears from the bill that the re-conversion of the premises into real estate was agreed to among all the heirs and devisees in March, 1903, at which time, by verbal agreement, the lot was accepted by appellee in lieu of the $4500 bequeathed in trust for her by her mother's will. The personal estate of the testatrix inventoried by the administrators amounted to $16,125.57. The bill alleges that the indebtedness amounted only to the sum of $429.30, and it further appears from the allegations of the bill that, with the exception of a note for $1200, all the personal estate was retained by the administrators, and no account had been rendered thereof to the court or to appellee, who is surety on the bond of the administrators. At the time of the alleged re-conversion of the premises into real estate, and its acceptance by appellee, no other person or persons than the four children of the testatrix had any interest in the land or the proceeds thereof. All of them being of age and under no disability, they had the right to re-convert it into real estate instead of selling it and disposing of the proceeds in accordance with the provisions of the will. In our opinion Albert Pasquay did not, upon the re-conversion, become the owner of any interest in the land. The re-conversion, as alleged in the bill, was not for the benefit of all the heirs but was for the purpose of vesting title in appellee. It was the agreement that appellee might take it as real estate in lieu of other provisions made for her in the will, and her acceptance of it, that constituted the re-conversion, and this operated to vest in her the equitable title. But if it be conceded, as claimed by appellant, that by the re-conversion

each of the heirs became seized of a one-fourth interest in the premises, the three brothers conveyed their interests by parol to appellee, and pursuant thereto delivered possession, before appellant instituted the attachment proceeding.

Appellant contends that the parol agreement set up in the bill is within the Statute of Frauds, and therefore invalid. We have above set out the averments of the bill as to the agreement and the consideration therefor. The bill alleges that "in pursuance thereof the said Ernest Pasquay, Rudolph Pasquay and Albert Pasquay delivered to your complainant the exclusive possession of the said real estate above described, and she entered into possession of the same under and in pursuance of the said agreement and of the conveyances hereinafter mentioned." Where, pursuant to an oral sale of land, the consideration is fully paid and possession given the purchaser, this is a sufficient performance to take the case out of the Statute of Frauds. (*Fitzsimmons* v. *Allen,* 39 Ill. 440; *Temple* v. *Johnson,* 71 id. 13; *Ramsey* v. *Liston,* 25 id. 114; *Morrison* v. *Herrick,* 130 id. 631; *Ashelford* v. *Willis,* 194 id. 492.) In the last mentioned case it was said (p. 502) : "While, at law, in order to constitute a valid conveyance of real estate or any interest in land it must be by deed having a seal and attended with certain formalities, yet in equity a good and indefeasible title may be conveyed without any writing whatever. The rights of the parties depend upon the character and extent of performance and the effect upon the donee by allowing repudiation. Practically all the writers on equity jurisprudence are agreed that contracts not under seal, and even contracts not in writing affecting or concerning an interest in land, are recognized in equity, if they have been so far performed that to permit a party to repudiate them would of itself be a fraud, and this court is committed to that doctrine. (Citing authorities.) Derived from the above authorities, the rule seems to be, that where the contract is fully performed and a valuable consideration paid

and possession taken under it, the purchaser or grantee may, in equity, rely upon his title for a defense or enforce specific performance of the contract."

There is still another answer to this contention of appellant. A verbal contract respecting land is not void but is voidable only, at the will of either party to it, and a third person cannot object to the parties themselves being bound by the contract. The Statute of Frauds is a personal defense, and can only be relied upon by the parties or their privies. (*Gary* v. *Newton,* 201 Ill. 170; *Singer, Nimick & Co.* v. *Carpenter,* 125 id. 117.) Assuming, as we must, that the allegations of the bill well pleaded are true, appellant had no interest in the premises and was not in privity with any of the parties at the time the agreement was made, and he is in no position, therefore, to interpose the Statute of Frauds.

The fact that some time after the verbal agreement by which the appellee claims title Albert Pasquay made a quit-claim deed to Rudolph, and subsequently Rudolph and Ernest quit-claimed to the appellee, is not inconsistent with the allegations of the bill that the appellee claimed title by the verbal agreement. The bill alleges that these deeds were made by virtue of said verbal agreement. They did not convey title in the first instance, but were merely evidence of the title conferred by virtue of the provisions of the parol agreement under which possession was taken. Neither is the allegation of the bill that up to the time of the death of Emilie Pasquay appellee and her brother Albert lived with her mother on said premises, and that after the death of Emilie Pasquay appellee continued to make said premises her home, inconsistent with the averment that possession was delivered to appellee, in pursuance of said verbal agreement, at the time it was made.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*